**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| ABIDIAS DE JESUS SANTOS; and MATHEUS DOS SANTOS, <br><br> Plaintiffs, <br><br> v. <br><br> MARKWAYNE MULLIN, Secretary of the United States Department of Homeland Security; TIMOTHY BAPTISTE, Supervisory ICE Officer; PATRICIA HYDE; Field Office Director; DAVID WESLING, Acting Field Office Director for the Boston Field Office in Burlington, Massachusetts; and TODD LYONS, Acting Director of ICE, <br><br> Defendants. | Civil Action No. 4:26-cv-11590-MRG <br><br> MOTION FOR LEAVE TO FILE EXCESS PAGES GRANTED ON MAY 8, 2026 |

**MEMORANDUM IN SUPPORT OF**
**DEFENDANT'S MOTION TO DISMISS**

Defendants, by and through their attorney, Leah B. Foley, United States Attorney for the District of Massachusetts, hereby submit the following memorandum of law in support of their motion to dismiss Plaintiffs Abidias De Jesus Santos and Mattheus Dos Santos' Complaint.

**INTRODUCTION**

Plaintiffs were issued expedited removal orders in 2016 pursuant to 8 U.S.C. § 1225(b)(1) after they applied for admission to the United States. Through this Complaint, Plaintiffs ask this Court to prohibit U.S. Immigration and Customs Enforcement ("ICE") from effectuating these orders and invite judicial review of the issuance of such orders under the theory that they cannot be subjected to expedited removal because they were paroled from custody after receiving such orders. This Court lacks subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)

as Congress has squarely stripped this Court of jurisdiction to "review … any individual determination or to entertain any other cause or claim arising from or relating to the implantation or operation of an order of removal pursuant to section 1225(b)(1)".  8 U.S.C. § 1252(a)(2)(A)(i)*; see also De Andrade v. Moniz,* 802 F. Supp. 3d 325, 329 (D. Mass. 2025) ("Congress has stripped courts of the jurisdiction to review orders of removal pursuant to § 1225(b)(1)"); *S.W. v. Noem*, No. 25-CV-9264 (PKC), 2025 WL 3754067, at *5 (S.D.N.Y. Dec. 29, 2025) (finding no jurisdiction under Section 1252(a)(2) to consider argument that "once paroled, as he was, he may never again be subjected to expedited removal proceedings.").

Congress has also prohibited judicial review of the Department of Homeland Security's ("DHS") decision to "commence proceedings" or "execute removal orders" pursuant to 8 U.S.C. § 1252(g) and therefore Plaintiffs' request that this Court order DHS institute removal proceedings and enjoin their removal from the United States cannot proceed.

Plaintiffs also fail to state a claim and therefore their Complaint is subject to dismissal under Fed. R. Civ. P. 12(b)(6) even if this Court had jurisdiction to consider their arguments. Plaintiffs do not contest that they received expedited removal orders under 8 U.S.C. § 1225(b)(1) in 2016 upon a determination that they were arriving aliens inadmissible to the United States. Their parole from custody did not provide them any lawful status in the United States and does not preclude ICE from effectuating their expedited removal orders now that they have been found not to have a credible fear of persecution or torture if returned to Brazil.

Additionally, Plaintiffs receipt of expedited removal orders does not violate the Fifth Amendment's Due Process Clause as Plaintiffs received the procedural protections and process provided by statute and regulation for applicants for admission.  *See Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953) ("*Mezei*") (explaining that "an alien on the threshold of

entry stands on a different footing: 'Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned.'") (quoting *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950)); *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 140 (2020) (applicant for admission "has only those rights regarding admission that Congress has provided by statute" and "the Due Process Clause provides nothing more…").

For these reasons, Plaintiffs' Motion for a Temporary Restraining Order must be denied and this Complaint must be dismissed.

## BACKGROUND

### A. Legal Background for Aliens Seeking Admission to the United States.

#### 1. Expedited Removal Procedure.

The Supreme Court has long acknowledged that Congress exercises "plenary power to make rules for the admission of foreign nationals and to exclude those who possess those characteristics which Congress has forbidden." *Kleindienst v. Mandel*, 408 U.S. 753, 766 (1972). Pursuant to that longstanding doctrine, "an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application, for the power to admit or exclude aliens is a sovereign prerogative." *Landon v. Plasencia*, 459 U.S. 21, 32 (1982). The broad scope of the political branches' authority over immigration is "at its zenith at the international border." *United States v. Flores-Montano*, 541 U.S. 149, 152–53 (2004).

An alien who is seeking admission to the United States is known as "an applicant for admission" or an "arriving alien." 8 U.S.C. § 1225(a)(1). All "aliens [] who are applicants for admission … shall be inspected by immigration officers" to determine if they are admissible to the United States. *Id.*, § 1225(a)(3). An applicant for admission at a port-of-entry "must present whatever documents are required and must establish to the satisfaction of the inspecting officer

that the alien is not subject to removal … and is entitled, under all of the applicable provisions of the immigration laws and this chapter, to enter the United States."  8 C.F.R. § 235.1(f)(1).

In the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104208, Tit. III, § 302(a), 110 Stat. 3009-579, Congress amended Section 1225(b) to add "expedited removal" procedures to "streamline[] rules and procedures . . .  to make it easier to deny admission to inadmissible aliens," while ensuring that there is "no danger that an alien with a genuine asylum claim will be returned to persecution." H.R. Rep. No. 469, 104th Cong., 2d Sess. Pt. 1, at 157–58 (1996) (House Report); *see also Thuraissigiam*, 591 U.S. at 109-11 (describing expedited removal process).

Expedited removal is a process specific to certain applicants for admission.  *See* 8 U.S.C. § 1225(b) (describing "inspection of applicants for admission.").  Within that broader category, two groups of aliens are subject to expedited removal under § 1225(b)(1).  The first group encompasses aliens (which includes the Plaintiffs) who are "arriving in" the United States who lack valid documents or who are inadmissible due to fraud.  8 U.S.C. § 1225(b)(1)(A)(i).  For these individuals, the inspecting officer "shall order the alien removed from the United States without further hearing unless the alien indicates either an intention to apply for asylum … or a fear of persecution." *Id.*  An arriving alien is defined as "an applicant for admission coming or attempting to come into the United States at a port-of-entry" and such alien "remains an arriving alien even if paroled" pursuant to 8 U.S.C. § 1182(d)(5) "and even after any such parole is terminated or revoked."  8 C.F.R. § 1.2.  Pursuant to 8 C.F.R. § 235.3, certain classes of aliens are subject to expedited removal, including "arriving aliens, as defined by 8 CFR 1.2".  8 C.F.R. §235.3(b)(l)(i).

DHS can also issue expedited removal orders to aliens designated by the Secretary of Homeland Security within certain statutory limits.  *See* 8 U.S.C. §1225(b)(l)(A)(iii) ("Designation

4

Provision").  The statute limits designation to the following: "An alien ... who has not been admitted or paroled into the United States, and who has not affirmatively shown, to the satisfaction of an immigration officer, that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility." 8 U.S.C. § 1225(b)(l)(A)(iii)(II).  As discussed, *supra,* Defendants do not rely on this Designation Provision in defending DHS's application of expedited removal to Plaintiffs, but instead rely on DHS's "arriving in" authority as implemented by the regulations.

### *Credible Fear Proceedings.*

If an alien subject to expedited removal expresses a fear of persecution or torture, the expedited removal order is held in abeyance and the inspecting officer must refer the alien an interview with an asylum officer to determine whether the alien has a credible fear.  *See* 8 U.S.C. §§ 1225(b)(1)(A)(ii) & (B); 8 C.F.R. §§ 208.30, 235.3(b)(4).  If an asylum officer makes a positive finding of credible fear of persecution,[1] the individual is placed into removal proceedings to pursue asylum under 8 U.S.C. § 1229a.  *Id.*  If the asylum officer makes a negative fear determination, the applicant has an opportunity to have such determination reviewed by an Immigration Judge ("IJ").  8 U.S.C. 1225(b)(1)(B)(iii)(III); 8 C.F.R. § 1003.42; *Thuraissigiam,* 591 U.S. at 110.  If the IJ reverses and makes a positive credible fear determination, the IJ must vacate the expedited removal order and ICE will then place the alien in removal proceedings before the IJ under 8 U.S.C. § 1229a.  *See* 8 C.F.R. § 1208.30(g)(2)(iv)(B).

If the IJ affirms the asylum officer's negative fear determination, the case is remanded to

---

[1] A credible fear is defined as " a significant possibility, taking into account the credibility of the statements made by the alien in support of the alien's claim and such other facts as are known to the officer, that the alien could establish eligibility for asylum under [8 U.S.C. §1158]." 8 U.S.C. §1225(b)(l)(B)(v).

ICE and the alien "is removed from the United States without further hearing or review." 8 U.S.C. §1225(b)(l)(B)(iii)(I), 8 C.F.R. §1208.30(g)(2)(iv)(A). As discussed below, the INA precludes further review by the agency or any court of credible fear determination. 8 U.S.C. §§1225(b)(l)(B)(iii), 1252(a)(2)(A)(iii), 1252(e)(2); 8 C.F.R. §1003.42(f), which the Supreme Court found constitutional in *Thuraissigiam,* 591 U.S. at 140-41.

> ***Detention.***

An individual subject to an expedited removal order "is not entitled to immediate release" regardless of whether their asylum claim is reviewed fully or in an expedited manner. *Id.* at 111. Even if an alien demonstrates a credible fear, such individual "shall be detained for further consideration of the application for asylum." 8 U.S.C. §1225(b)(l)(B)(ii); *Jennings v. Rodriguez,* 583 U.S. 281, 297 (2018) ("Read most naturally, §§1225(b)(l) and (b)(2) ... mandate detention of applicants for admission until certain proceedings have concluded."). And if an individual is deemed not to have a credible fear, Section 1225(b)(1)(B)(iii)(IV) provides for mandatory detention until removal from the United States. ("Any alien subject to the procedures under this clause *shall be detained* pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed.") (emphasis added). The statute does not impose "any limit on the length of detention" pending a credible fear determination or asylum application, and does not authorize bond hearings or release under 8 U.S.C. §1226(a). *Jennings*, 583 U.S. at 297.

> **2. The Secretary has Broad Discretion to Grant and Terminate Parole which is Not an Admission.**

The only exception to § 1225(b)(l)'s detention mandate is found in 8 U.S.C. § 1182(d)(5)(A), which allows DHS to parole aliens into the United States on a case-by-case basis for "urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5). *See Jennings,* 583 U.S. at 300 (holding that the existence of §1182(d)(5)(A)'s "express exception to

detention implies that there are no other circumstances under which aliens detained under §1225(b) may be released").

Parole, however, is not an "admission" to the United States.  8 U.S.C. §§ 1101(a)(13)(B), 1182(d)(5)(A).   Indeed, as another session of this Court has explained, "[a] non-citizen paroled into the country under § 1182(d)(5)(A) is still treated as an applicant for admission subject to the expedited removal process." *De Andrade v. Moniz*, 802 F. Supp. 3d 325, 330 (D. Mass. 2025).

As the Supreme Court has explained, "aliens who arrive at ports of entry—*even those paroled elsewhere in the country for years pending removal*—are 'treated' for due process purposes 'as if stopped at the border.'" *Thuraissigiam*, 591 U.S. at 139 (quoting *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 215 (1953)) (emphasis added); *see also Martinez v. Hyde*, 792 F. Supp. 3d 211, 215 (D. Mass. 2025) ("Parole 'into the United States,' under section 1182(d)(5)(A), permits a non-citizen to physically enter the country, subject to a reservation of rights by the Government that it may continue to treat the non-citizen 'as if stopped at the border.') (quoting *Thuraissigiam*, 591 U.S. at 139).

An applicant for admission, even if paroled into the United States, "remain[s] constructively detained at the border, *i.e.* legally unadmitted, while their status is being resolved by immigration officials." *Ibragimov v. Gonzales*, 476 F.3d 125, 134 (2d Cir. 2007); *see also Duarte v. Mayorkas*, 27 F.4th 1044, 1059 (5th Cir. 2022) ("[A] paroled alien is legally equivalent to an alien that is held in custody at the border while their application for admission is processed.").

DHS may terminate discretionary parole when, "in the opinion of the Secretary of Homeland Security," … "the purposes of such parole . . . have been served."  8 U.S.C. § 1182(d)(5)(A); *see also* 8 C.F.R. § 212.5(e)(2)(i).  Additionally, parole automatically terminates without written notice upon the departure of an alien from the United States or "at the expiration

of the time for which parole was authorized".  8 C.F.R. § 212.5(e)(1).

No pre-termination hearing is required. *See Ofosu v. McElroy,* 98 F.3d 694, 700 (2d Cir. 1996) (explaining that parole "may be ended without hearings or special forms."); *Ahrens v. Rojas,* 292 F.2d 406, 410 (5th Cir. 1961) ("Neither the statute nor the regulation provides for a hearing on revocation of parole.").

After parole is terminated, "the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall *continue to be dealt with in the same manner as that of any other applicant for admission* to the United States." 8 U.S.C. § 1182(d)(5)(A) (emphasis added); 8 C.F.R. § 212.5(e)(2)(i) (after automatic termination, the alien "shall be restored to the status that he or she had at the time of parole").  Once parole is terminated, "[a]ny further inspection or hearing shall be conducted under section 235 [8 U.S.C. § 1225] or 240 [8 U.S.C. § 1229a] of the Act".  8 C.F.R. § 212.5(e)(2)(i); *see Ahrens,* 292 F.2d at 410 (noting that after parole termination, "the plaintiff's status was the same as if he had been stopped at the border.").

### B.  Plaintiffs' Immigration History.

Plaintiffs are natives and citizens of Brazil who presented themselves at the Paso Del Norte Port of Entry in El Paso, Texas on August 7, 20216.  Doc. No. 1, ¶ 3.  U.S. Customs and Border Protection ("CBP") "initiated expedited removal proceedings" against them pursuant to 8 U.S.C. § 1225(b)(1) due to their inadmissibility to the United States under 8 U.S.C. § 1182(a)(7)(A)(i)(I). *Id.*, ¶ 4; *see also* Notice and Order of Expedited Removal at Doc. No. 1, 26-27.  Plaintiff Abidias asserted a fear of return to Brazil on account of a man allegedly threatening to harm him after he told this man to drive more slowly.  *Id.*, ¶ 5; *see also* Record of Sworn Statement in Proceedings at Doc. No. 1, 32-37.

On August 8, 2016, CBP exercised its statutory authority and paroled Plaintiffs from custody pursuant to 8 U.S.C. § 1182(d)(5). *Id.*, ¶ 6; *see also* I-94 Arrival Records at Doc. No. 1, 25-26. Such parole expired on November 8, 2016. *Id.* Plaintiffs contend they filed a Form I-589, Application for Asylum and Withholding of Removal with U.S. Citizenship and Immigration Services in May 2017. *Id.*, ¶ 39. Plaintiffs acknowledge that DHS has not initiated removal proceedings against them under 8 U.S.C. § 1229a. *Id.*, ¶ 43.

Plaintiffs assert that they were recently "subjected to the credible fear interview process" which resulted in an asylum officer issuing "a negative credible fear determination, which was subsequently reviewed and affirmed by an Immigration Judge on or about March 10, 2026." *Id.*, ¶¶ 45-46. They assert that with the IJ affirming the negative credible fear determination they "now face imminent removal" from the United States. *Id.*, ¶ 52. Plaintiffs do not, however, contend that they are currently in ICE custody or that they have been specifically directed to depart the United States.

### C. **Procedural Background.**

Plaintiffs filed their Complaint with this Court on April 3, 2026. Doc. No. 1. They assert this Court has jurisdiction under 28 U.S.C. § 1331 and they bring three Counts: Ultra Vires Agency Action, Violation of the Immigration and Nationality Act, and Violation of Due Process. *Id.* Specifically, Plaintiffs challenge DHS's continuation of the expedited removal process against them, asserting that ICE cannot effectuate their expedited removal orders because they were paroled from custody in 2016. *Id.,* ¶ 13.

Plaintiffs ask this Court to declare "Defendants' application of expedited removal procedures to Plaintiffs under 8 U.S.C. § 1225(b)(1) is unlawful, ultra vires, and contrary to the Immigration and Nationality Act." *Id.* at PRAYER FOR RELIEF. They ask this Court to prohibit

their removal pursuant to their expedited removal orders and to order Defendants to place them in standard removal proceedings under Section 1229a. *Id.*

## LEGAL STANDARD

A district court should dismiss claims under Federal Rule of Civil Procedure 12(b)(1) when it lacks subject matter jurisdiction to decide them. "In ruling on a motion to dismiss for lack of jurisdiction, 'the district court must construe the complaint liberally, treating all well-pleaded facts as true and indulging all reasonable inferences in favor of plaintiff.'" *Excel Home Care, Inc. v. U.S. Dep't of Health & Human Servs.*, 316 B.R. 565, 568 (D. Mass. 2004) (citation omitted). But "[t]hat is not to say that this leniency eliminates the plaintiff's burden of proving an appropriate jurisdictional basis." *Id.* A plaintiff has the burden of establishing that the court has subject matter jurisdiction, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992), and courts "presume that [they] lack jurisdiction unless the contrary appears affirmatively from the record." *Renne v. Geary*, 501 U.S. 312, 316 (1991) (citations omitted).

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a court must accept as true all the factual allegations in a complaint, that doctrine is not applicable to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Threadbare recitals of legal elements which are supported by mere conclusory statements do not suffice to state a cause of action. *Id.*

## ARGUMENT

This Court lacks jurisdiction pursuant to 8 U.S.C. §§1252(a)(2)(A), (b)(9), (e) and (g) to review Plaintiffs' challenge to DHS's application of expedited removal against them. Plaintiffs' challenge also does not fall within the narrow habeas review Congress preserved for matters related

to expedited removal because they do not bring a Habeas Petition and even if they did, they are not contesting any of the limited issues subject to judicial review under that provision. *See* 8 U.S.C. §1252(e)(2) & (3).

Additionally, Plaintiffs fail to state a claim as to their assertion that they are not subject to expedited removal because they were paroled into the United States after applying for admission at a port of entry. Plaintiffs were issued their expedited removal orders prior to their parole from custody and DHS may apply expedited removal under U.S.C. §1225(b)(l)(A)(i) to an alien "arriving in the United States," which includes parolees (and Plaintiffs).

**A. <u>Multiple Jurisdictional Bars Prohibit District-Court Review of Plaintiffs' Challenge to Expedited Removal</u>.**

Plaintiffs raise only one challenge to their expedited removal orders—that because they were paroled at ports of entry, they are ineligible for expedited removal. While this claim is legally without merit, this Court nonetheless lacks subject-matter jurisdiction over that claim at least three times over.

**1. 8 U.S.C. §§ 1252(a)(2)(A) and (e).**

As recently and succinctly explained by another session of this Court, "Congress has stripped courts of the jurisdiction to review orders of removal pursuant to § 1225(b)(1)." *De Andrade,* 802 F. Supp. 3d at 329. *See also Singh v. Barr*, 982 F.3d 778, 782 (9th Cir. 2020) ("Judicial review of an expedited removal order, including the merits of a credible fear determination, is thus expressly prohibited by § 1252(a)(2)(A)(iii)."). As explained below, Congress has provided extremely limited judicial review in individual cases of expedited removal orders and the only issues related to the expedited removal process that are subject to judicial review through a habeas action are not in dispute in this matter.

11

8 U.S.C. § 1252(a)(2)(A), entitled "Matters not subject to judicial review," provides that, for "[r]eview relating to section 1225(b)(1)"—including any order of expedited removal or credible fear determination issued under section 1225(b)(1)—"[n]otwithstanding any other provision of law ... *no court shall have jurisdiction to review*" specified agency actions related to expedited removal. 8 U.S.C. §§1252(a)(2)(A)(i-iv). (emphasis added).  The provision then goes on to specify four particular categories that "cover every aspect of the expedited removal process." *Mendoza-Linares v. Garland,* 51 F.4th 1146, 1154 (9th Cir. 2022). "Congress could scarcely have been more comprehensive in its articulation of the general prohibition on judicial review of expedited removal orders." *Id.* at 1155.

While Plaintiffs' claims need to meet only one provision for the Court to lack jurisdiction, here Plaintiffs' claims are barred by each and every one of § 1252(a)(2)(A)'s jurisdictional bars.

*First,* 8 U.S.C. §1252(a)(2)(A)(i) bars district-court jurisdiction.  Plaintiffs' claims indisputably "aris[e] from or relat[e] to the implementation or operation of an order of removal pursuant to section 1225(b)(l)." 8 U.S.C. §1252(a)(2)(A)(i).  Here, Plaintiffs seek review of the "application" of the expedited removal statute to them claiming it is inapplicable based on their grants of parole at ports of entry.

*Second,* 8 U.S.C. §1252(a)(2)(A)(ii) applies because DHS made a decision "to invoke" expedited removal to paroled arriving aliens like Plaintiffs through the 1997 regulations, now codified at 8 C.F.R. §§1.2 and 235.3(b)(l).

*Third,* 8 U.S.C. §1252(a)(2)(A)(iii) also bars district-court jurisdiction over Plaintiffs' claims.  That provision bars district-court jurisdiction over the "application" of expedited removal to an "individual alien." 8 U.S.C. §1252(a)(2)(A)(iii).  Again, Plaintiffs are challenging the "application" of the expedited removal statute to them, so their claims are barred.

*Fourth,* 8 U.S.C. §1252(a)(2)(A)(iv) bars district-court jurisdiction here. That provision precludes jurisdiction for courts to review "procedures and policies adopted by the Attorney General [and now DHS Secretary] to implement the provisions of section 1225(b)(l) of this title," the expedited-removal statute. Plaintiffs seemingly challenge DHS's "procedures" to implement the provisions of the expedited-removal statute to paroled arriving aliens; specifically, they challenge the validity of regulations, 8 C.F.R. §§1.2 and 235.3(b)(l), that were promulgated in 1997 and apply expedited removal to paroled aliens like themselves.

Plaintiffs' claims are thus subject to every one of 8 U.S.C. § 1252(a)(2)(A)'s jurisdictional bars and this Court therefore lacks jurisdiction review and adjudicate such claims.

And while Congress did authorize habeas review over certain specific challenges to expedited removal via a habeas petition, Plaintiffs have not filed a habeas action, and in any event, Plaintiffs' claims do not fall within any of those narrow categories.

Three of the four subsections where jurisdiction is barred over challenges to expedited removal provide an exception for claims in a habeas petition falling within "subsection (e)." *See* 8 U.S.C. §1252(a)(2)(A)(i)-(ii), (iv). Subsection (e) provides two exceptions to the reviewability bars in section § 1252(a)(2)(A), neither of which apply here.

Specifically, 8 U.S.C. §1252(e)(2) provides for judicial review "in habeas corpus proceedings" for expedited removal "determinations," but limits said review to: (1) whether the petitioner is a citizen; (2) whether the petitioner was ordered removed; and (3) whether the petitioner is a lawful permanent resident or refugee. 8 U.S.C. §1252(e)(2). Yet Plaintiffs' claims here present none of those permissible challenges. They do not claim that they are U.S. citizens. They do not contest that they received expedited removal orders under Section 1225(b)(1) and

13

have been ordered removed, and they do not assert that they are lawful permanent residents or refugees. [2]

Congress made it clear that while an alien, in a habeas action, can seek judicial review as to "whether the petitioner was ordered removed", such petitioner cannot (in habeas or through any other action) challenge the merits of an expedited removal order:

> In determining whether an alien has been ordered removed under [8 U.S.C. §1225(b)(l)], the court's inquiry shall be limited to whether such an order in fact was issued and whether it relates to the petitioner. There shall be no review of whether the alien is actually inadmissible or entitled to any relief from removal.

8 U.S.C. §1252(e)(5). Here, it is undisputed that Plaintiffs were issued an expedited removal order under Section 1225(b)(1) due to their inadmissibility to the United States under 8 U.S.C. § 1182(a)(7)(A)(i)(I). *Id.*, ¶ 4; *see also* Notice and Order of Expedited Removal at Doc. No. 1, 26-27. Plaintiffs further acknowledge that they were recently "subjected to the credible fear interview process" which resulted in an asylum officer issuing "a negative credible fear determination, which was subsequently reviewed and affirmed by an Immigration Judge on or about March 10, 2026." *Id.*, ¶¶ 45-46. There is no colorable claim to the contrary that Plaintiffs were ordered removed under Section 1225(b)(1) and therefore no judicial review, even under habeas, is permitted. *See Mendoza-Linares*, 51 F.4th at 1159 ("Because it is clear that the agency entered an expedited

---

[2] Congress did, however, permit limited systemic review of challenges to the "validity of the system," defined as whether the expedited removal statute or any implementing regulation is constitutional or whether such statute and regulation is inconsistent with the INA or other statute. 8 U.S.C. § 1252(e)(3)(A) & (B). Such challenges must be brought in the U.S. District Court for the District of Columbia filed "no later than 60 days" after the rule or agency action "is first implemented." *Id.* This exception plainly does not allow this Court jurisdiction and Plaintiffs do not contest otherwise.

removal order … the limitations in Section 1252(e) "bar judicial review of the merits underlying that order … [i]ndeed, overwhelming precedent confirms this point.").

Accordingly, the Court's review of any other aspect of DHS's issuance of an expedited removal order is foreclosed by 8 U.S.C. 1252(e)(1) which definitively states that "[w]ithout regard to the nature of the action or claim … no court may enter declaratory, injunctive, or other equitable relief in any action pertaining to an order to exclude an alien in accordance with section 1225(b)(1) of this title except as specifically authorized in [Section 1252(e)(2)]." As such, Plaintiffs' request for this Court to enter declaratory and injunctive relief (Doc. No. 1, PRAYER FOR RELIEF) must be rejected.

Courts within this circuit and around the country recognize the narrow judicial review available concerning expedited removal orders and routinely dismiss actions challenging the issuance of an expedited removal order, including in factual circumstances similar to those presented in this Complaint. *See, e.g., S.W. v. Noem*, No. 25-CV-9264 (PKC), 2025 WL 3754067, at *5 (S.D.N.Y. Dec. 29, 2025) (finding no jurisdiction under Section 1252(a)(2) to consider argument that "once paroled, as he was, he may never again be subjected to expedited removal proceedings."); *Batioja Cuero v. Warden, FCI Berlin,* 748 F. Supp. 3d 58, 66 (D.N.H. 2024) (dismissing habeas petition and explaining that petitioner's claims regarding the expedited removal orders "validity and alleged inapplicability to his circumstances, as well as his statutory and constitutional claims relating to how the immigration officer examined him or served the [order], are matters that fall within the scope of those jurisdiction-stripping provisions."); *Arandi v. Morgan*, No. 19-cv-12351-RGS, 2020 WL 1891949, at * 1 (D. Mass. Apr. 16, 2020) (Court lacked jurisdiction to review expedited removal order under 8 U.S.C. § 1252(a)(2)(A) and Section 1252(e)); *Viana Santos v. McAleenan*, 392 F. Supp. 3d 192, 194 (D. Mass. 2019) (Insofar as

petitioners challenge the validity of the expedited removal scheme, their challenge fails because an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application, for the power to admit or exclude aliens is a sovereign prerogative.).

Circuit courts also consistently find judicial review wanting in response to challenges to the issuance of expedited removal orders under similar circumstances as presented by Plaintiffs. *See, e.g., Castro v. United States Dep't of Homeland Sec.,* 835 F.3d 422, 430 (3d Cir. 2016) ("§ 1252 makes abundantly clear that if jurisdiction exists to review any claim related to an expedited removal order, it exists only under subsection (e) of the statute.");*Shunaula v. Holder,* 732 F.3d 143, 146 (2d Cir. 2013) (holding that the "jurisdictional bar" of § 1252 precludes judicial review of a claim of "illegality in the Attorney General's particular decision to remove" an alien under the expedited removal statute); *Khan v. Holder*, 608 F.3d 325, 329-330 (7th Cir. 2010) (collecting cases and joining with "courts that have considered the issue [to] hold that we lack jurisdiction to inquire whether the expedited removal procedure to which the Khans were subjected was properly invoked."); *Li v. Eddy*, 259 F.3d 1132, 1134-35 (9th Cir. 2001), *opinion vacated as moot*, 324 F.3d 1109 (9th Cir. 2003) ("With respect to review of expedited removal orders, . . . the statute could not be much clearer in its intent to restrict [it to certain] habeas review[.]"); *Brumme v. INS,* 275 F.3d 443, 44 7 (5th Cir. 2001).

As Plaintiffs have no statutory basis allowing for judicial review of their expedited removal orders, this Court lacks jurisdiction to consider their Complaint and provide their requested relief pursuant to Section 1252(a)(2)(A).

**2.  8 U.S.C. § 1252(g).**

16

Even if 8 U.S.C. §1252(a)(2)(A) and (e) did not bar district-court jurisdiction over Plaintiffs' claims, § 1252(g) would independently bar jurisdiction. In their Complaint, Plaintiffs request this Court stay Plaintiffs' removal orders and instead order that they be entered into removal proceedings under Section 1229a. Doc. No. 1 at PRAYER FOR RELIEF. These requests fall directly within 8 U.S.C. §1252(g)'s preclusion of review for actions seeking to challenge DHS's initiation of removal proceedings, which includes DHS's discretionary decision to initiate the removal procedure it deems most appropriate in a particular case, as well as ICE's authority to execute removal orders.

Section 1252(g) provides in relevant part that "notwithstanding any other provision of law (statutory or nonstatutory) ... no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the [Secretary] to *commence proceedings....* ," except through a petition for review from a final order of removal filed in a court of appeals. (Emphasis added). This provision applies "notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title." *Id.*

The Supreme Court has explained that 8 U.S.C. §1252(g) is "directed against a particular evil: attempts to impose judicial constraints upon prosecutorial discretion." *Reno v. Am.-Arab Anti-Discrimination Comm.,* 525 U.S. 4 71, 485 & n.9 (1999) *("AADC').* Here, Plaintiffs effectively request this Court "impose judicial constraints" on DHS's "prosecutorial" decision to "commence" expedited removal proceedings. But that is one of the actions that § 1252(g) bars. In *AADC,* the Court held that § 1252(g) precluded the district court's review of the aliens' selective prosecution claims which sought to enjoin the Government from commencing removal proceedings. *Id.* at 487 ("the language seems to have been crafted with such a challenge precisely in mind"); *see also*

*Bollat Vasquez v. Wolf*, 460 F. Supp. 3d 99, 114 (D. Mass. 2020) (explaining that under § 1225, immigration officials have discretion to place arriving aliens in either expedited removal proceedings under Section 1225(b)(1) or full removal proceedings under 8 U.S.C. § 1229a). Here, Plaintiffs challenge precisely DHS's authority to commence expedited removal proceedings rather than institute removal proceedings, and in fact, even ask this Court to order ICE to place them in removal proceedings. Doc. No. 1 at PRAYER FOR RELIEF. Section 1252(g) plainly precludes judicial review of such claim and issuance of such an order.

Section 1252(g) also bars district court review of any "decision or action by [ICE] to … execute removal orders." *See Compere v. Riordan,* 368 F. Supp. 3d 164, 171 (D. Mass. 2019) (explaining that because petitioner is "subject to a final order of removal and he seeks to enjoin ICE from enforcing that order … [h]is claim for injunctive relief falls, therefore, directly within the jurisdictional bar set by Congress."). As recently explained by another session of this Court, the jurisdictional bar applies if a petitioner were to "challenge their removability" and ICE's "discretionary decision[]" to execute a removal order. *D.V.D. v. U.S. Dep't of Homeland Sec.,* 778 F. Supp. 3d 355, 377 (D. Mass. 2025).

In their Complaint, Plaintiffs ask this Court to enjoin ICE from effectuating their expedited removal orders—such relief is prohibited by Section 1252(g) as this Court and others around the Country routinely conclude. *See, e.g., Candra v. Cronen*, 361 F. Supp. 3d 148, 156 (D. Mass. 2019) (explaining that a petitioner's "attempt to frame his claim in due process language does not change [the] result" that Section 1252(g) strips jurisdiction.); *Tejada v. Cabral,* 424 F. Supp. 2d 296, 298 (D. Mass. 2006) ("Congress made it quite clear that all court orders regarding alien removal—be they stays or permanent injunctions—were to be issued by the appropriate courts of appeals."); *Anderson v. Moniz*, No. CV 21-11584-FDS, 2022 WL 375231, at *4 (D. Mass. Feb. 7,

2022) ("Section 1252(g) can serve as a jurisdictional bar even when a petitioner contends that his due-process rights were violated."). [3] For these reasons, Section 1252(g) independently strips this Court of jurisdiction to enter the relief requested by Plaintiffs.

### 3.  8 U.S.C. § 1252(b)(9).

The jurisdictional bar at 8 U.S.C. §1252(b)(9) also applies to preclude the district court's review of Plaintiffs' challenge to their expedited removal orders.  That provision states that "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter [including§ 1225(b)(l)] shall be available only in judicial review of a final order under this section."  Notably, the statute further provides that, apart from a petition for review filed directly with the courts of appeals, "*no court shall have jurisdiction, by habeas corpus under section 2241 of title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact*."  *Id.* (emphasis added). Through this Complaint, Plaintiffs clearly seek judicial review of "questions of law and fact" "arising from" DHS's "action taken" and "proceeding brought" to remove them from the United States via the expedited removal process. Section 1252(b)(9) does not allow such judicial review

---

[3] Circuit courts of appeal are in accord.  *See Camarena v. Dir., Immigr. & Customs Enf't*, 988 F.3d 1268, 1274 (11th Cir. 2021) ("[W]e do not have jurisdiction to consider 'any' cause or claim brought by an alien arising from the government's decision to execute a removal order. If we held otherwise, any petitioner could frame his or her claim as an attack on the government's *authority* to execute a removal order rather than its *execution* of a removal order."); *Tazu v. Att'y Gen. United States*, 975 F.3d 292, 297 (3d Cir. 2020) (explaining that "the discretion to decide *whether* to execute a removal order includes the discretion to decide *when* to do it. Both are covered by the statute.").

from this Court as to "interpretation and application of constitutional and statutory provisions" concerning Section 1225(b)(1).

**B.    Even Assuming the District Court had Jurisdiction, Plaintiffs are Properly Subject to Expedited Removal as Arriving Aliens Paroled at Ports of Entry.**

Even if this Court had jurisdiction over Plaintiffs' challenge to their expedited removal orders, Plaintiffs nonetheless fail to state a claim under statute or the Constitution as to their contention that DHS cannot effectuate their expedited removals because they were paroled from custody after issuance of such orders. Plaintiffs' claim fails based on the plain language of the statute which provides that an alien "arriving in the United States" who is inadmissible under one of the qualifying grounds is subject to expedited removal. 8 U.S.C. §1225(b)(l)(A)(i). Plaintiffs acknowledge that they applied for admission as arriving aliens at a port of entry and were issued expedited removal orders under this statutory provision due to their inadmissibility to the United States. Doc. No. 1, ¶¶ 3-4.

Nonetheless, instead of acknowledging that this provision allows for the effectuation of their expedited removal orders, Plaintiffs assert that under a different provision that allows for expedited removal--Section 1225(b)(1)(A)(iii)(II)--DHS can only issue an expedited removal order against an individual "who has not been admitted or paroled into the United States, and who has not affirmatively shown, to the satisfaction of an immigration officer, that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility". Doc. No. 1, ¶ 13.

This argument is a non sequitur because DHS's expedited removal order was not issued against Plaintiffs under this provision—instead, it was issued under Section 1225(b)(1)(A)(i), prior to Plaintiffs' parole from custody into the United States. As recently explained by another district court, an expedited removal order "became final under the applicable immigration regulations

20

before [an alien] raised the claims that stopped his removal and triggered his referral for a credible fear interview." *Batioja Cuero v. Warden, FCI Berlin*, 748 F. Supp. 3d 58, 64 (D.N.H. 2024); *see also Mendoza-Linares*, 51 F.4th at 1152 ("Because a removal order had already been issued prior to the initiation of the credible-fear review process, the effect of the asylum officer's actions was to uphold and adopt that expedited removal order.").

As such, Plaintiffs were properly issued expedited removal orders as arriving aliens and such orders do not lose their validity even after parole from custody.  *See Singh v. United States Dep't of Homeland Sec.*, No. 25-CV-08180-JST, 2025 WL 3241157, at *4 (N.D. Cal. Nov. 20, 2025) (declining to accept argument that DHS cannot "revive an unexecuted expedited-removal process years after release" and refusing to "impose a time limit on the expedited removal process where none exists in statute.").

Text, statutory context, and history demonstrate that the "arriving in" provision still applies to paroled arriving aliens.  For paroled arriving aliens, like Plaintiffs, the parole statute makes clear that parole "shall not be regarded as an admission" and "when the purposes of such parole ... have been served" the alien "shall forthwith" be returned to custody and "shall continue to be dealt with in the same manner as that of any other applicant for admission." 8 U.S.C. §1182(d)(5)(A).

Thus, an alien granted parole at a port of entry remains unadmitted and hence, in the *status* of an alien "arriving in" the United States. *See Duarte,* 27 F.4th at 1058 ("[A]lthough a paroled alien is physically allowed to enter the country, the legal status of the alien is the same as if he or she were still being held at the border waiting for his or her application for admission to be granted or denied").  Congress surely meant to include such aliens under §1225(b)(l)(A)(i).

The statute's language that parole is not an admission reflects a foundational "legal fiction" in immigration law that aliens paroled into the United States are legally in the same position as

aliens standing at the border, regardless of the duration of that parole. *Leng May Ma v. Barber,* 357 U.S. 185, 188-89 (1958). The Supreme Court has repeatedly affirmed that legal fiction in an unbroken line of decisions spanning nearly a century. *See Thuraissigiam,* 591 U.S. at 139; *Leng May Ma,* 357 U.S. at 188-91; *Kaplan v. Tod,* 267 U.S. 228, 230 (1925) (terminated parole had lasted more than 8 years). "The parole of aliens seeking admission is simply a device through which needless confinement is avoided while administrative proceedings are conducted. It was never intended to affect an alien's status, and to hold that petitioner's parole placed her legally within the United States is inconsistent with the congressional mandate, the administrative concept of parole, and the decisions of this Court." *Leng May Ma,* 357 U.S. at 190 (cleaned up).

As such, Plaintiffs were properly subjected to expedited removal orders under Section 1225(b)(1)(A)(i) as arriving aliens determined inadmissible to the United States. Simply because they were paroled from custody and received their credible fear review years later does not remove them from the expedited removal process set forth by statute and regulation.

Plaintiffs also fail to state a claim with their contention that their receipt of expedited removal orders violates the Fifth Amendment. Plaintiffs cannot dispute that they have received the statutory and regulatory required protections owed to applicants for admission and as explained by the Supreme Court, the receipt of such process passes constitutional muster.

Applicants for admission lack any constitutional due process rights with respect to admission aside from the rights provided by statute: "[w]hatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned," *Mezei*, 345 U.S. at 212, and, "it is not within the province of any court, unless expressly authorized by law, to review [that] determination." *United States ex. rel. Knauff v. Shaughnessy*, 338 U.S. 537, 543 (1950).

22

The Supreme Court reaffirmed "[its] century-old rule regarding the due process rights of an alien seeking initial entry" in *Thuraissigiam*, explaining that "[w]hen an alien arrives at a port of entry—for example, an international airport—the alien is on U.S. soil, but the alien is not considered to have entered the country …". *Id.* at 139.   All applicants for admission, "even those paroled elsewhere in the country for years pending removal" (*id.* at 139) "have no entitlement to procedural rights other than those afforded by statute." *Id.* at 107.   Instead, even if paroled, they "are 'treated' for due process purposes 'as if stopped at the border.'" *Id.* at 139 (quoting *Mezei*, 345 U.S. at 215). The Supreme Court was clear: "the Due Process Clause provides nothing more" than the procedural protections set forth in 8 U.S.C. § 1225 that allow an individual to seek protection from removal if he fears return to his home country and also seek parole from the agency. *Id.*

Furthermore, the Supreme Court has upheld the constitutionality of the INA's preclusion of review of credible fear proceedings. *Thuraissigiam,* 591 U.S. at 138.   In so doing, it has observed that "[a]n alien subject to expedited removal has an opportunity at three levels to obtain an asylum hearing, and the applicant will obtain one unless the asylum officer, a supervisor, and an immigration judge all find that the applicant has not asserted a credible fear." *Id.* at 110.

Plaintiffs acknowledge that they received a credible fear interview at which an asylum officer properly considered Plaintiffs' fear claims and made a negative determination, finding that their claims failed to meet the eligibility requirements under the asylum statute and Convention Again Torture implementing regulations.   As Plaintiffs received the procedural protections and process provided by statute and regulation, their due process rights have been satisfied. *See Banegas v. McDonald*, No. CV 25-13161-NMG, 2025 WL 3251395, at *3 (D. Mass. Nov. 21, 2025) (finding that upon expiration of parole, alien was subject to Section 1225(b)(1) "just as

23

though he had been stopped at the border and his due process rights were significantly curtailed accordingly" and that this "is true even if the alien had remained in the country for a period of time under certain restricted conditions.").

For these reasons, even if this Court had jurisdiction to review Plaintiffs' argument that they are not properly subject to the expedited removal process, Plaintiffs have failed to state a claim as to statutory or constitutional violations.

## C. The Cases Cited by this Court are Inapposite.

In setting a briefing schedule in this matter, the Court ordered Defendants to "engage with the following cases and indicate whether any of their holdings are applicable to this matter: *Rincon v. Hyde*, 810 F. Supp. 3d 101 (D. Mass. 2025), *Bances v. Noem*, No. 25−cv−13840−PBS, 2026 U.S. Dist. LEXIS 11722 (D. Mass. Jan. 22, 2026), *Jimenez v. FCI Berlin*, 799 F. Supp. 3d 59, 69 (D.N.H. 2025)." Doc. No. 9. The holdings from these cases are not generally applicable to this matter for multiple reasons.

First, these cases were filed as habeas actions challenging the lawfulness of detention by ICE and were not filed as civil complaints concerning DHS's utilization and effectuation of expedited removal orders. As such, the respective courts were not required to determine if they had jurisdiction to consider the challenge presented by Plaintiffs here—whether DHS had properly applied the expedited removal procedures to the habeas petitioners.[4]

---

[4] In a similar habeas action to those raised by the Court, Judge Talwani noted that Section 1252(a)(2)'s prohibition on judicial review "concerns inspection of nonresidents, determinations of inadmissibility, and referral of claims for asylum, not detention." *Doe v. Moniz*, 800 F. Supp. 3d 203, 214 n.9 (D. Mass. 2025).

Next, these cases did not involve individuals subject to expedited removal orders, and therefore once again, the courts were not forced to confront the arguments raised in Defendants' motion to dismiss.

For example, in *Rincon*, ICE issued petitioner a Notice to Appear ("NTA") in removal proceedings under Section 1229a which the court concluded "automatically vacated [p]etitioner's Order of Expedited Removal". 810 F. Supp. 3d at 107 n.3. Here, of course, no NTA has been issued.[5] In *Rincon*, Judge Murphy nonetheless ordered petitioner receive a bond hearing pursuant to the Fifth Amendment, but again, this result is not at issue here with Plaintiffs' not detained and without a doubt asking for relief from removal—relief Judge Murphy acknowledged he would likely be jurisdictionally unable to provide. *Id.* at 110 (distinguishing *Thuraissigiam* as "[p]etitioenr does not challenge any part of his actual removal proceedings" and "does not purport to invoke any rights regarding admission"). Here, Plaintiffs certainly are asking for relief from removal and are invoking their rights regarding admission—relief that the Supreme Court explained courts cannot provide under Section 1252.

In *Bances*, unlike in this case, the petitioner's expedited removal order was vacated after an IJ determined he established a credible fear of persecution. 816 F. Supp. 3d 220, 221. The petitioner was then released on parole which led Judge Saris to find that petitioner was no longer subject to detention under Section 1225(b)(1) and Section 1226(a) instead controlled detention. *Id.* at 222-23.

---

[5] Nonetheless, Judge Murphy did find that because petitioner's "initial detention and expedited removal order were done pursuant to section 1225(b)(1)," even after parole under Section 1182(d)(5) and placement in removal proceedings, the petitioner "continues to be detained under that authority". *Id.* at 109. This was on account of the "entry fiction" discussed earlier and supports Defendants' argument that Plaintiffs remain subject to Section 1225(b)(1) despite their parole from custody in 2016.

Similarly, in *Jimenez,* the IJ reversed the negative credible fear determination and ICE issued petitioner a NTA in removal proceedings.  799 F. Supp. at 63.  As such, the court found that the expedited removal order was no longer in effect and Section 1226(a) authorized detention, not Section 1225(b)(1) since that provision "only mandates detention of noncitizens arriving in the United States during the pendency of expedited removal proceedings and the credible fear interview and review process."  *Id.* at 68-69.  In contrast, Plaintiffs were not issued NTAs, were not entered into removal proceedings, and remained in expedited removal proceedings subject to Section 1225(b)(1)'s procedures for determining a fear of persecution or torture which they have since received.

## CONCLUSION

For the foregoing reasons, this Court must dismiss this Complaint due to lack of subject matter jurisdiction and failure to state a claim.

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

Dated: May 8, 2026                    By:    */s/ Mark Sauter*
                                             Mark Sauter
                                             Assistant United States Attorney
                                             United States Attorney's Office
                                             1 Courthouse Way, Suite 9200
                                             Boston, MA 02210
                                             Tel.: 617-748-3347
                                             Email: mark.sauter@usdoj.gov

## CERTIFICATE OF SERVICE

I, Mark Sauter, Assistant United States Attorney, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

Dated: May 8, 2026              By:           */s/ Mark Sauter*

Mark Sauter
Assistant United States Attorney

27